## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

<table>
<tr><td>HESTER PRYNNE</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Plaintiff,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>v.</td><td>)</td><td>Civil Action No. 1:19-cv-329</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>RALPH NORTHAM,</td><td>)</td><td></td></tr>
<tr><td>ET AL.,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Defendants.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
</table>

### MEMORANDUM OPINION

THIS MATTER comes before the Court on Defendant's[1] Motion to Dismiss (Dkt. 19) Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Plaintiff brought this suit alleging that the Virginia Sex Offender and Crimes Against Minors Registry (VSOR) violates the Ex Post Facto Clause of both the United States and Virginia Constitution and her right to Due Process under the Fourteenth Amendment to the United States Constitution. Plaintiff sued Colonel Gary Settle, Superintendent of the Virginia Department of State Police, in his official capacity.

---

[1] Plaintiff originally sued both Governor Ralph Northam and Colonel Gary Settle but has since stipulated to the dismissal of Governor Northam as an improper party. As such, the Court will resolve the instant motion as if it were filed solely by Colonel Settle.

Plaintiff is a fifty-two-year-old resident of Manassas, Virginia. In January 1994, Plaintiff pleaded guilty to one count of taking indecent liberties with a fifteen-year-old male, Va. Code § 18.2-370.1. The male at issue was her charge while she was a twenty-one-year-old nanny. The sexual relationship between Plaintiff and the male was short-lived and consensual and there was no allegation of force or physical violence on Plaintiff's part.

After pleading guilty, Plaintiff was sentenced in February of 1994 to a suspended three-year sentence and four years of probation. Plaintiff's initial sentence did not require registration as a sex offender and she was not counseled about the possibility of such a requirement.

Three months after Plaintiff's conviction, in April of 1994, the Virginia General Assembly enacted the VSOR. The legislation stated that "every person . . . under community supervision on July 1, 1994, for a felony covered by this section shall be required to register with the Department of State Police." Former Va. Code § 19.2-298.1(B) (1994). Many states began creating sex offender registries around this same time due to financial pressure placed on them by the federal government; many of the amendments to the VSOR Act over the years were also made in response to similar financial pressures.

The crime Plaintiff was convicted of was listed in the crimes subject to registration with the VSOR, id. at § 19.2-298.1(A), and because Plaintiff was still on probation, i.e. community supervision, on the effective date of the legislation, she was required to register. Plaintiff was notified of her registration obligation by her probation officer for the first time in 1995. Plaintiff complied with the obligation. In May 1996, Plaintiff was released from probation early due to her good behavior but did not petition for removal from the VSOR.

When the VSOR was first enacted in 1994, anyone required to register could petition the local Circuit Court for removal from the registry at any time. The registry was also not available to the public and was primarily accessible only by law-enforcement. In 1997, the Virginia legislature amended the VSOR to prohibit individuals from petitioning for removal within the first ten years of registration. This same set of amendments created a lifetime duty to register for those convicted of "sexually violent" offenses, a list of offenses designated by the legislature. Plaintiff's offense was not initially categorized as "sexually violent," however, the amendments made it legally impossible for her to petition for removal until 2005.

In 1998, the VSOR was again amended requiring the Virginia State Police to make the information public on the internet by January 1, 1999. A further amendment in 2001 classified

3

Plaintiff's crime as a "sexually violent offense." This reclassification of Plaintiff's crime meant that she would be required to register with the VSOR for life and would not be permitted to petition for removal from the registry. Also, by statute, Plaintiff's page on the VSOR must indicate that her offense was "Violent."

Over time, Virginia has added further registration requirements. For example, at the time of registration, Plaintiff was required to provide a sample of tissue or blood for DNA, provide her email address and screen names, submit to fingerprinting and allow palm prints to be taken, provide information about places of employment and residence, and provide registration information for any vehicles or watercraft she owned or leased. Whenever any of that information changes, she is to notify the police with haste, and for many changes, Plaintiff must appear in person to do so. For example, whenever Plaintiff creates a new online identity, i.e. email address or screen name, she must notify the police within thirty minutes of doing so. Additionally, a sex offender investigative officer is permanently assigned to Plaintiff's specific case and can visit her residence at any time, and typically does so every six months to verify compliance with registration requirements. Plaintiff must also be photographed by law-enforcement at least once every two years. As a violent offender, Plaintiff must

appear to register in-person every two years and be fingerprinted every ninety days, though the local Circuit Court recently allowed her to mail the fingerprint forms in.

In addition to her registration requirements, due to her classification as having committed a violent sexual offense, it is a crime if someone knows of her offense and leaves a child alone with her. Plaintiff may not adopt a child. She also may not enter a school or daycare facility during school hours or during school-sponsored events; though there is a statutory process to have this restriction reduced. Plaintiff complains that these restrictions have hampered her ability to become a mother, to be a mother-figure to her step-daughter, and to attend churches that have daycare facilities.

There are certain legal barriers to employment as well. Plaintiff cannot work as an educator or caretaker, drive for a rideshare service, or drive a tow truck. Plaintiff believes that her status on the VSOR was the reason she lost her job at a large accounting firm and had a tentative offer at another prestigious bank rescinded.

Plaintiff also has difficulty traveling as there are a variety of registration requirements in other states tied to her status in Virginia and many countries will not grant her a visa based on her being on the registry.

Some sex offenders also have further restrictions about where they are able to live, work, and spend their time. These restrictions are placed on certain offenders that are especially violent or those that have failed to meet their registration obligations. Plaintiff complains that she has had numerous housing opportunities taken from her based on her status on the VSOR. Though, of note, none because she was barred from accepting them.

Plaintiff filed her Complaint against Defendant alleging three counts: Violation of the United States Constitution's Ex Post Facto Clause (Count I); Violation of the Due Process Clause under the Fourteenth Amendment to the United States Constitution (Count II); Violation of the Virginia Ex Post Facto Clause (Count III). Defendant now moves to dismiss the Complaint contending that Plaintiff failed to name a proper party or state a claim upon which relief may be granted.

A motion to dismiss tests the sufficiency of the complaint. SD3, LLC v. Black & Decker (U.S.) Inc., 801 F.3d 412, 441 (4th Cir. 2015). On a Rule 12(b)(6) motion to dismiss, a court must accept all well-pleaded facts as true and construe those facts in the light most favorable to the plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Reyes v. Waples Mobile Home Park Ltd. P'ship, 903 F.3d 415, 423 (4th Cir. 2018). The complaint must provide a short and plain statement showing that the pleader is

entitled to relief, Fed. R. Civ. P. 8(a)(2), and it must state a plausible claim for relief to survive a motion to dismiss, Iqbal, 556 U.S. at 679; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

Defendant first contends that Plaintiff has failed to name a proper party in Colonel Settle and her Complaint should be dismissed for this reason. Defendant argues that Plaintiff's attempt to name Colonel Settle is misplaced for two reasons: (1) that respondeat superior is inappropriate in a Section 1983 case and (2) that he is not directly involved in the running of the VSOR. Defendant is correct that "principles of respondeat superior do not apply in imposing liability under [Section] 1983." Doe v. Rosa, 795 F.3d 429, 439 n.7 (4th Cir. 2015) (internal quotation marks and citation omitted). If that were the only way in which Plaintiff had named Colonel Settle as a defendant, then he would be an improper party.

To bring a Section 1983 case against a state officer in their official capacity, one must seek "prospective injunctive relief against state officials acting in violation of federal law." Frew v. Hawkins, 540 U.S. 431, 437 (2004). To be a proper party to such a suit, the state officer, "by virtue of his office [must have] some connection with the enforcement of the act . . . whether it arises out of the general law, or is

specially created by the act itself." Ex parte Young, 209 U.S. 123, 157 (1908).

Here, Colonel Settle, as Superintendent of the Virginia State Police, is directly charged with enforcement of the VSOR laws, including collection of information and maintenance. Additionally, Colonel Settle is tasked with promulgating regulations concerning the VSOR laws such that he controls how registration, dissemination of information, and similar functions are implemented and the laws are enforced. Va. Code § 9.1-915. As Colonel Settle is directly tasked by the VSOR Act to enforce its provisions, he "stands in special relation" to it and is a proper party to defend constitutional claims against its enforcement. Waste Mgmt. Holdings v. Gilmore, 252 F.3d 316, 331 (4th Cir. 2001) (noting the key issue is whether the state officer has "a specific duty to enforce the challenged statutes.")

The Court now turns its attention to Count I, the alleged violations of the Ex Post Facto Clause of the United States Constitution. The Founding Fathers included the Ex Post Facto Clause out of a desire to protect citizens from the dangerous whims of the people that are subject to swift shifts over time. Fletcher v. Peck, 10 U.S. 87, 137-38 (1810). The Ex Post Facto Clause only applies to criminal punishment, not remedial civil statutes. Calder v. Bull, 3. U.S. 386, 388 (1798). To determine

whether a statute violates the Ex Post Facto Clause, a court must look to its effect rather than its form. Weaver v. Graham, 450 U.S. 24, 31 (1981). A civil and regulatory law does not violate the Ex Post Facto Clause unless there is the "clearest proof" that it is actually criminal in effect. Smith v. Doe, 538 U.S. 84, 92 (2003).

To determine whether a statute effectuates a retroactive punishment a court must engage in a two-part test. Id. at 92. The first part of the test is to ask whether the legislature intended to impose punishment. Id. If the legislature did so intend, "that ends the inquiry." Id. If, however, the legislature intended "to enact a regulatory scheme that is civil and nonpunitive," courts "must further examine whether the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it civil." Id. (internal citations and quotation marks omitted). The second part of the test is to analyze the punitive effects of the statute using a factorial analysis. Id. at 97.

The punitive factor analysis provided in Smith is derived from the seven factors laid out in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-169 (1963). Smith, 538 U.S. at 97. It is important to note that the Mendoza-Martinez factors are not exhaustive nor dispositive, but instead helpful guideposts. Id. (citing Hudson v. United States, 522 U.S. 93, 99 (1997); United

States v. Ward, 448 U.S. 242, 249 (1980)). The factors to be considered when analyzing whether a regulatory scheme punitive in effect are: (1) whether it imposes an affirmative disability or restraint, (2) whether it has historically been regarded as a punishment, (3) whether a finding of scienter is necessary,(4) whether it promotes the traditional aims of punishment—retribution and deterrence, (5) whether the behavior to which it applies is already criminal, (6) whether it is rationally connected to a nonpunitive purpose, and (7) whether it is excessive in relation to that purpose. Id.; Mendoza-Martinez, 372 U.S. at 168-169.

When looking at the legislative intent, the formal attributes of the enacting legislation are probative to intent. Smith, 538 U.S. at 93-95. In this case, the Virginia Legislature stated that it intended the VSOR Act to be nonpunitive by including a legislative statement that the VSOR's purpose is "to assist the efforts of law-enforcement agencies and others to protect their communities and families from repeat sex offenders." Va. Code § 9.1-900. Further, the Legislature evinced its intent to make the VSOR a civil regime by primarily placing it in Title 9.1 of the Virginia Code which deals with "Commonwealth Public Safety." See Ballard v. F.B.I., Chief, 102 Fed. Appx. 828, 829 (4th Cir. 2004) (affirming district court's reasoning that the VSOR's location in the Code was evidence of

intent to make it a civil regime). These show that the legislative intent was to make the VSOR a civil regime. As such, the Court must turn to the second part of the test and analyze whether there is "the clearest proof" that the VSOR Act and related regulations have a punitive effect. Smith, 538 U.S. at 92.

Many courts have reviewed the VSOR Act and associated regulations, as well as similar statutes and regulatory schemes from other states and the federal government. In almost every case, a sexual offender registry, or related requirement, was found not to be punitive. See id. at 98-105 (finding a sexual offender registry nonpunitive because it did not disclose information that was not already public and was rationally related to preventing recidivism); United States v. Morgan, 255 F. Supp. 3d 221, 230-31 (D.D.C. 2017) (noting that occasional in-person reporting is an inconvenience but not punitive); Klitze v. Commonwealth, 475 S.E.2d 830, 832-32 (Va. App. Ct. 1996) (stating that while the VSOR imposes an affirmative burden it is merely remedial in nature and any punishment for failure to follow the requirements is prospective and not retroactively punitive).

Plaintiff contends that amendments to the VSOR Act over time have increased the burden of the registration requirements such that it has tipped over the line and become a punitive

regime. In her Complaint, Plaintiff discusses the mandatory notification of certain entities, such as schools, near a registrant's home and the inability for some on the registry to live near parks and schools,[2] as well as the numerous reporting requirements that Plaintiff is subject to.

To begin, Plaintiff claims that the affirmative notification of nearby educational, assisted-living, and other similar facilities of her registration status is akin to the historic punishment of shaming. The Supreme Court has stated that "[o]ur system does not treat dissemination of truthful information in furtherance of a legitimate governmental objective as punishment." Smith, 538 U.S. at 98. While in Smith the Court discussed how the passivity of notification in the regime then at issue reduced its punitive nature, it did not say that an active notification system is indeed punitive. In the instant case, the VSOR Act requires automatic notification of schools, foster homes, assisted-living, and nursing facilities. Va. Code § 9.1-914. This limited notification does not alert the entire community to a registrant's status as historic shaming activities would have. Instead, only those who need to be notified in furtherance of the government objective of reducing

---

[2] The Court notes that Plaintiff does not allege in her Complaint that she is personally burdened by the living restrictions and is, thus, unlikely to have standing to challenge them. As neither party briefed the issue the Court will not discuss the potential issue of subject-matter jurisdiction and will focus on why Plaintiff is otherwise unable to state a claim for relief regarding that portion of the VSOR Act.

recidivism receive such automatic notice. Because the VSOR Act requires only limited dissemination of truthful information in order to further the legitimate governmental purpose of reducing recidivism, this element of the law is not punitive.

Plaintiff also raises issue with the restrictions placed on where certain registrants may live. The VSOR Act prohibits those convicted of especially violent crimes from living within 500 feet or loitering within 100 feet of a school or child care center. Va. Code §§ 18.2-370.2, 18.2-370.3. The VSOR Act also subjects individuals who have failed to properly meet its registration and reporting requirements to the same loitering restrictions. Va. Code § 18.2-370.2. Plaintiff contends that these restrictions are akin to the ancient punishment of banishment as it forces registrants to avoid certain areas of town and live in isolated parts of the community, and in many urban areas, it may be incredibly difficult to find any home that is not within the prohibited perimeter. See, e.g., Does v. Snyder, 834 F.3d 696, 701-02 (6th Cir. 2016) (discussing the difficulty for registrants of finding a place to live in Grand Rapids, Michigan due to living restrictions similar to but more onerous than the VSOR).

The Court, however, need not address the punitive nature of these living and loitering restrictions because they do not apply retroactively. Va. Code §§ 18.2-370.2, 18.2-370.3

(providing that individuals convicted of offenses that occurred after July 1, 2006 are subject to the living and loitering restrictions). Even if a registrant is later prosecuted for failing to uphold the registration and reporting requirements, this is separate from and not additional punishment based on the prior conviction. Smith, 538 U.S. at 101-02. (stating that future punishment for failing to meet registration requirements is not an ex post facto punishment).

Plaintiff lastly complains of what she describes as the "web of reporting requirements." These include blood sampling and fingerprinting, short time periods within which to report changes in information, and frequent, potentially embarrassing routine reporting. As noted above, many courts have looked at these or similar requirements and found that they are not punitive. See Cunningham v. West Virginia, 6:06-cv-169, 2007 WL 895866 (S.D. W. Va. 2007), summarily aff'd, 251 Fed. Appx. 829 (4th Cir. 2007); Doe v. Commonwealth, 74 Va. Cir. 75 (Fairfax County 2007). While they may be onerous for some, the registration requirements are merely portions of a remedial statutory regime and the sort of inconvenience that attends any registration regime. See Morgan, 255 F. Supp. 3d at 230-31. Further, as far as the routine reporting goes, there is a process to have the burden lightened that Plaintiff may avail herself of, if she has yet to do so. Va. Code § 9.1-909. As the

14

requirements complained of by Plaintiff are of the sort to be merely inconveniences related to registration generally, they are not punitive.

As the majority of the elements of the VSOR Act that Plaintiff challenges do not have punitive effect and those which might are not retroactively applied, the Ex Post Facto Clause of the United States Constitution is not offended by the VSOR Act and Count I will be dismissed for failure to state a claim.

The Court next reviews Defendant's contention that Count II, violations of the Fourteenth Amendment right to Due Process, does not state a claim for which relief may be granted. Plaintiff states that her claim is one for violations of substantive due process and claims that the fundamental rights that have been impinged are those of (1) the right to travel, (2) the right to work, (3) the right to parent, and (4) the right to privacy. Plaintiff also alleges that the VSOR further violates her due process rights as it is not rationally related to a legitimate state interest and is a harsh and oppressive retroactive civil law.

"Strict scrutiny applies only when laws significantly interfere with a fundamental right." Bostic v. Schaefer, 760 F.3d 352, 377 (4th Cir. 2014) (internal quotations and citations omitted). The guidepost to determine whether something is a "fundamental right" or liberty protected by the Due Process

Clause is that the activity be "'deeply rooted in this Nation's history and tradition.'" Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (quoting Moore v. City of East Cleveland, Ohio, 431 U.S. 494, 503 (1977) (plurality opinion)). Some "fundamental rights" that are specially protected by the Due Process Clause include the right to marry, Obergefell v. Hodges, 135 S. Ct. 2584 (2015); Loving v. Virginia, 388 U.S. 1 (1967); the right to parent, Skinner v. Oklahoma ex rel. Williamson, 316 U.S. 535 (1942); the right to sexual and bodily integrity, Griswold v. Connecticut, 381 U.S. 479 (1965); Rochin v. California, 342 U.S. 165 (1952); and the right to interstate travel, Griffin v. Breckenridge, 403 U.S. 88 (1971).

To allow the reviewing court to properly apply the guideposts, a plaintiff must provide "a 'careful description' of the asserted fundamental liberty interest." Washington, 521 U.S. at 721. The plaintiff must also show that the alleged impingement either directly or unduly burdens the fundamental right in order to trigger substantive due process protections. See Maher v. Roe, 432 U.S. 464, 473-74 (1977).

The Court will resolve each of Plaintiff's alleged due process violations seriatim beginning with the alleged violation of her right to travel. Plaintiff complains that her ability to travel, both foreign and domestic, is somewhat curtailed by her presence on the VSOR. Before traveling, Plaintiff alleges that

she must inform the Virginia State Police before leaving the state. Further, many other states require Plaintiff to register with state or local police shortly after arrival in their jurisdictions. Plaintiff also has a difficult time traveling abroad as many countries have a policy of denying entry to individuals on sex offender registries.

As stated above, the right to interstate travel is a fundamental right. Griffin, 403 U.S. at 105-06. The right to international travel has not been deemed a fundamental right. Califano, 439 U.S.170, 176 (1978). The travel notification requirements, however, do not implicate the fundamental right of interstate travel as nothing in the VSOR Act precludes Plaintiff or any other offender from leaving the Commonwealth, they must simply notify the state police. See, e.g., Smith, 538 U.S. at 87. The notification and registration laws of other states may not be raised here as Virginia has no say in them and any effect on Plaintiff is merely attendant to her registrant status. Even if the ability to travel internationally were a fundamental right, there would be no constitutional injury suffered by Plaintiff for the same reasons as above. Additionally, without travel notification requirements, sex offenders could travel frequently and for long periods of time in order to evade the requirements and subvert the Act's purpose of protecting the public from reoffenders. See, e.g., Doe v. Moore, 410 F.3d 1337,

1348-49 (11th Cir. 2005). Thus, such requirements are rationally related to the government objective of protecting the public from recidivist offenders.

Plaintiff also alleges that her right to work is infringed by her placement on the VSOR. The VSOR Act and related laws prevent registrants from working as teachers, daycare workers, rideshare drivers, and tow-truck drivers. Va. Code §§ 46.2-116; 46.2-2099.49. They also require certain types of licenses be granted to registrants in other fields of employment. Plaintiff also complains that numerous private employers have a standing policy against hiring registrants and that she believes she lost her job as an accountant when her previous employer learned of her registrant status.

The Supreme Court "has indicated that the liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment, but a right which is nevertheless subject to reasonable government regulation." Conn v. Gabbert, 526 U.S. 286, 291-92 (1999). Here, all of the professions cited by Plaintiff allow individuals to potentially be in unsupervised and isolated locations with other individuals, some of whom may be potential victims. The VSOR Act and related laws prohibit registrants from engaging in professions where there is a significant risk of recidivism, which the VSOR Act was created

to prevent. Thus, it is reasonable for the government to attempt to regulate these professions and prevent registrants from participating in them.

As to Plaintiff's allegation that many private employers use presence on the VSOR as a bar to employment when not legally required, that is simply an effect that is neither mandated nor regulated by the Commonwealth, and thus it is inappropriate to be raised in this case. Further, as the VSOR merely combines information that was already publicly available, her employers, or potential employers, are just as able to discover her conviction through a criminal background check. Smith, 538 U.S. at 99-100. Because the prohibition of registrants' participation in certain professions is reasonably related to protection of the public, they do not offend due process.

Plaintiff next complains that her right to parent is impinged due to the laws of the VSOR Act. This is because she is fearful of how the law will affect her ability to parent as the VSOR laws make it a crime for anyone knowing of her conviction to leave her alone with a child, restrict her ability to enter school property during school hours, she may not attend a church that also has a school on the premises, and she may not adopt. Plaintiff also states that she is fearful that while she may currently be able to parent, the law may later change and her child might be taken from her.

As of yet, however, Plaintiff has not experienced a constitutional injury, all of the issues raised are prospective as she does not have children. Further, there are procedures in place to remedy the potential harms Plaintiff complains of. For example, if a VSOR registrant wants to enter a school, they may file a petition for review by the local circuit court after notifying the head of school and local commonwealth attorney. Va. Code § 18.2-370.5(c). As Plaintiff's claims are prospective and there are remedial procedures in place to cure the majority of them, she has failed to state a claim for a due process violation of her right to parent.

Lastly, Plaintiff states that her right to privacy is harmed by being placed on the VSOR. Plaintiff alleges that placing her name, address, photo, conviction, and other information about her on the VSOR, as well as requirements that certain members of the public be notified of her presence and convictions, causes her to lose privacy. Numerous courts have taken on this and similar issues, however, and have found there is no constitutional injury. See, e.g., Does v. Munoz, 507 F.3d 961, 965 (6th Cir. 2007); Moore, 410 F.3d at 1344. This is because the VSOR and similar registries do nothing more than amalgamate information that is already public and dispense it to the public. Smith, 538 U.S. at 99-100. Furthermore, the

notification requirements are rationally related to the goal of protecting the public and preventing future sexual offenses.

As the VSOR Act is rationally related to the legitimate government goals of protecting the public and reducing recidivism and does not place undue burden on Plaintiff, there is no offense to Plaintiff's Fourteenth Amendment rights to Due Process.

The Court finally looks to Count III, the alleged violation of the Virginia Constitution's Ex Post Facto Clause. As both of the federal questions will be dismissed as discussed above, this Court declines to exercise its supplemental jurisdiction over Count III due to the principles of abstention and Count III will be dismissed without prejudice. 28 U.S.C. § 1367(c); Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639-41 (2009) (stating that exercise of supplemental jurisdiction is discretionary by district courts).

For the reasons stated, the Court finds that Plaintiff has failed to state a claim upon which relief may be granted. Defendant's motion will be granted. An appropriate order shall issue.

Claude M. Hilton

CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
August *16*, 2019